Ib

| | | |
|---|---|---|
| Plaintiff | ) United States | **RECEIVED** |
| Mana | ) District Court | MAR 24 2025 \Kw |
| Gourmet Products | ) Northern District | THOMAS G. BRUTON |
| v. | ) of Illinois | CLERK, U.S. DISTRICT COURT |
| Defendant | ) | 1:25-cv-03103 |
| United States | ) | Judge April M. Perry |
| | | Magistrate Judge Laura K. McNally |
| | | Cat 2 Random Assignment |

## Complaint

This complaint is being brought to the attention of this court for two specific reasons. The first reason is, in good faith believed I was reapplying as a new concern with a new store inventory that included some of the other things I had previously sold. as per the suggestion of the first examiner Miss Sheila Bryant, who first informed me that my store vegetables could not be put together into a prepared salad and be considered as a Staple food. I attempted to discuss the point according to the rules, but in the end she informed me that she was not going to let me continue as is but, I could reapply if I wanted to, which I did. Subsequently when I reapplied, I received a new (FNS) number 0713078, confirming my new status. (see exhibit 1) My new agent Mr. Patrick Cunningham recognized me as a new client and requested all the necessary documents and ordered an inspection of my store. With the photos and report he received of my store, he then confirmed my compliance with the regulations for a grocery store. He then asked me for an accounting which is out of character for a new vendor. This request would essentially be a compliance request only for an old established store of the sales thus far in the form of a specific week timeline. As I understand it, this is never done to a new concern and understandably so. In my case, a snapshot of sales at that point would only reflect mostly what the store used to sell. As I see it this was the application of a double standard. Had I been treated normally and with fairness as any other NEW concern, my second point would be moot.

For my second point, Mr. David Shively a review officer, of the Retailer Operation Division erred in his decision to uphold the status quo and thus deny the application of the herein

mentioned plaintiff, by using erroneous and false information based on a misinterpretation thus the misrepresentation of the regulations regarding the proposed qualifications of vendors applying for the snap program. (see exhibit 2) page 1 par 1 for the denial,

This decision to deny is based on whether previously prepared salads for sale on the premises are to be considered as stable foods and the misplacement of two words, (and) being one of the words and (or) being the other misplaced word.

The common understanding of these two words is that, they cannot be interchanged in any sentence and the meaning of that sentence remains the same. In my understanding of the word (and), It means inclusive while on the other hand the word (or) as a syntax in this sentence denotes optional. In the rules of CFR. 278.1 Food and Nutrition Service, these two words (and) and (or) are used several times, separately and sometimes together such as (and/or), See Exhibit 3 Ineligible firm & 4. If we read the rules as they are written, it leaves no room for conjecture or rogue interpretation. The rules say what it says, and is not left open for an open or fabricated opinion.

To fit the narrative of my denial, these two words were taken out of context, misplaced and then misquoted in the regulation 7cfr 278.1-*IV Ineligible firm* -cook foods or heated on site by the retailer before or after purchase and hot and/or cold prepared food not intended for home preparation **or** consumption, ...(see exhibit 4)

In Shivley's final argument, (see exhibit 5) Analysis and Findings, he conceded that "while the prepared food may be intended for home consumption, they were not intended for home preparation since they were prepared by the store. The language of the regulation requires that both conditions be met, which in this case they do not. This is not what the regulation states, (see exhibit 4) it emphatically says home preparation **or** consumption, which means there is an option here, meaning a person can either prepare the salad at home **or** they could consume it at home. For this reason I believe the decision to deny Mana Gourmet Products as a snap vendor was ill-conceived and thus wrong. Therefore I pray this court to overturn and strike the decision to deny and immediately grant our ability to participate in the snap vendor program, we also wish to be restored and granted access

forthwith without any further delay, conditions, harassment or reprisal of any kind against Mana Gourmet Products for pointing out their error which has cost us profoundly already financially and in reputation.

December 03, 2024



**USDA** United States Department of Agriculture
Food and Nutrition Service
Supplemental Nutrition Assistance Program

Mana Gourmet Products
434 E 71st St
Chicago, IL 60619-1129

Dear Retailer:

This is in regard to your application to accept Supplemental Nutrition Assistance Program (SNAP) Electronic Benefit Transfer (EBT) benefits at the following location.

0713078
Mana Gourmet Products
434 E 71st St
Chicago, IL 60619-1129

We are unable to continue processing your application for this location.

Additional information or documentation is required, as listed below.

You are applying for authorization to accept SNAP benefits at a location for which additional verification of ownership is required. Please provide copies of all of the following documents.

- An affidavit (enclosed) stating that the applicants are not connected with the previously disqualified persons. This document must be notarized.
- All current business licenses (liquor license, food license, vendor license or any other similar license to do business) in the name of your firm at the Store location.
- For partnerships and sole proprietorships, provide a copy of the partnership or sole proprietorship business filing with the appropriate State agency.
- For corporations and LLCs, provide a copy of the articles of incorporation, including a list of current officers/shareholders/LLC members.
- Bill of sale and sales contract transferring ownership of assets of the business (inventory, equipment, building, right to apply for transfer of liquor licenses, any other assets of value) to the owner applying for SNAP authorization.
- If you own the building where your business is located, please provide a copy of your property deed or warranty deed verifying your ownership of the property.
- If you are leasing the property where your business is located, please provide a copy of the lease in your name. If applicable, please also provide the master lease for any sub-leases or any lease assignments.
- A letter from your bank or financial institution identifying the authorized signers for the business on any accounts used by the business.
- Federal personal tax returns for the most recent filing year for all owners/officers/LLC members.

- Federal business tax returns for the most recent filing year (if available) for all owners/officers/LLC members.
- Additional Information Required.

Please provided complete copies of requested documents with signatures if applicable.

**If we do not receive ALL documents as listed above within 30 calendar days of your receipt of this letter, we will suspend work on your application and a new application may be required.** Further, the documentation or information you submit must demonstrate that your firm meets our requirements and is eligible for authorization in order for your firm to be authorized.

If the documentation or information you submit in response to this request is inadequate (i.e., unclear or incomplete) and we cannot determine your firm's eligibility, we may request more extensive documentation or information from you to help us determine if your firm is eligible, or we may suspend work on your application and a new application may be required.

If you completed your application for SNAP authorization **online**, supporting documents can be submitted via mail, electronic submission, or a combination of both. Supporting documents must be mailed in if you submitted a **paper** application.

To submit your supporting documents via electronic submission, login to your online application at https://stars.fns.usda.gov/osa , go to "Upload Documents or View/Print Cover Letter, Certification and Signature Statement and 252E form" section, and click on the Upload button on the FNS Number record that you wish to submit documents.

Upload all of your documents first and then submit them as one complete package to avoid processing delays when submitting supporting documents electronically.

If submitting via mail, please send hardcopy documents to the address listed below:

Attn: Patrick Cunningham
USDA, Food and Nutrition Service
PO BOX 7228 (USPS Only)
Falls Church, VA 22040
Phone: (719) 717-0658

To avoid processing delays if submitting requested documents by mail:

- Include a copy of this letter with your package;
- Submit all documents in one package;
- Do not staple pages in the package together;
- <u>Do not combine copies of documents on a single page;</u>
- Do not send originals. Documents will not be returned; and
- Partial or unidentifiable submissions may not be processed.

Current SNAP regulations are available online, at https://www.fns.usda.gov/snap/retailer/training . For more information about eligibility requirements, please refer to https://www.fns.usda.gov/snap/my-store-eligible . If you have any questions, please contact Patrick Cunningham at (719) 717-0658.

Sincerely,

USDA, Food and Nutrition Service
Supplemental Nutrition Assistance Program



**United States Department of Agriculture**

**Food and Nutrition Service**

**Supplemental Nutrition Assistance Program**

**Retailer Policy Division**

**Administrative and Judicial Review Branch**

1320 Braddock Place, 5th Floor, Alexandria, VA 22314

David.shively@usda.gov

February 25, 2025

Issac J Crawford
Mana Gourmet Products
434 E 71st St
Chicago, IL 60619-1129
RE: Case Number - C0295689

Dear Store Owner:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS) in response to your request for an administrative review dated January 9, 2025. Also included therein is a statement regarding your rights to a judicial review.

It is the decision of the USDA that FNS's Retailer Operations Division properly denied the authorization of Mana Gourmet Products from participation as a retailer in the Supplemental Nutrition Assistance Program (SNAP). As a result, the firm may not reapply for SNAP authorization for a period of six months from the date of denial.

Sincerely,

DAVID A. SHIVELY
Administrative Review Officer

Enclosure

EXHIBIT 2

**U.S. Department of Agriculture**
**Food and Nutrition Service**
**Administrative Review Branch**

| | |
|---|---|
| Mana Gourmet Products,<br><br>Appellant,<br><br>v.<br><br>Retailer Operations Division,<br><br>Respondent. | Case Number: C0295689 |

**FINAL AGENCY DECISION**

The U.S. Department of Agriculture, Food and Nutrition Service, finds there is sufficient evidence to support the determination by the Retailer Operations Division to deny the reauthorization application of Mana Gourmet Products (hereinafter Appellant) to participate as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP).

**ISSUE**

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with Title 7 of the Code of Federal Regulations (CFR) Part 278, when it denied the application of Appellant to participate in SNAP.

**AUTHORITY**

According to 7 U.S.C. § 2023 and the implementing regulations at 7 CFR § 279.1, "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may . . . file a written request for review of the administrative action with FNS."

**CASE CHRONOLOGY**

Appellant was initially authorized to participate as a retailer in SNAP on July 7, 2020. In accordance with regulation, each SNAP-authorized firm is required to undergo a periodic reauthorization process to determine whether the firm still meets eligibility requirements.

On October 22, 2023, Appellant submitted the required reauthorization application, FNS-252-R, *Supplemental Nutrition Assistance Program Reauthorization Application for Stores*. On this document, Appellant reported that around 55 percent of its gross retail sales were from the sale

1

of staple foods and around 30 percent of its gross retail sales were from the sale of cold prepared foods. The application also reported that the firm carried at least three stocking units of three varieties in each of the four food staple products. As part of the firm's reauthorization process, an onsite store visit was conducted by an FNS contractor on December 14, 2024, to verify the firm's staple food stock.

On December 23, 2024, the Retailer Operations Division sent Appellant a letter requesting additional information. According to the letter, the Retailer Operations Division informed Appellant that based upon information obtained from Appellant's application and/or from the store visit, the store does not meet Criterion A and/or Criterion B requirements. Appellant was instructed to provide invoices/receipts to verify that the store carries at least three stocking units of three different varieties of foods in the dairy and breads or cereal staple food categories.

Additionally, the letter also asked Appellant to produce a a sales summary reports electronically generated by the firm's cash register system, such as end-of-day sales tapes, which must indicate which shares of its sales were from heated foods, cold prepared foods, non-foods, accessory foods, staple foods, and charges for heating services. The record indicates that Appellant complied with the request.

In a letter dated January 3, 2025, the Retailer Operations Division informed Appellant that its application to participate as an authorized retailer in SNAP was denied because it did not meet the definition and eligibility requirements of a retail food store established by Federal regulations at 7 CFR § 278.1(b)(1). This action was taken because the Retailer Operations Division determined that the Appellant firm was primarily a restaurant based on information provided on and in support of the firm's SNAP retailer authorization application, and as such failed to meet the definition of an eligible firm. Specifically, the denial letter states your firm is primarily a restaurant, because more than 50 percent of your total gross retail sales are from "heated foods" and/or "prepared foods." "Heated foods" are foods cooked or heated by the retailer before or after purchase." Prepared foods" are hot or cold foods not intended for home preparation and/or home consumption, including prepared foods that are consumed on the premises or sold for carryout. SNAP regulations, at 7 CFR § 278.1(b)(1)(iv), provides that restaurants are not eligible to participate in SNAP.

In an email dated January 9, 2025, Appellant requested an administrative review of the Retailer Operations Division's determination. The request was granted. Appellant supplemented its response, dated February 13, 2025, thereafter.

## STANDARD OF REVIEW

In an appeal of an adverse action, Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed. That means Appellant has the burden of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue.

## CONTROLLING LAW

The controlling law in this matter is contained in the Food and Nutrition Act of 2008, as amended (7 U.S.C. § 2018), and implemented through regulation under Title 7 CFR Part 278. In particular, 7 CFR Part 278.1(k)(1) and Part 278.1(l)(1) establish the authority upon which the application of any firm to participate in SNAP may be denied if it fails to meet the definition of an eligible firm.

7 CFR § 271.2 states, in part, that: Entities that have more than 50 percent of their total gross retail sales in: Food cooked or heated on-site by the retailer before or after purchase; and hot and/or cold prepared foods not intended for home preparation and consumption, including prepared foods that are consumed on the premises or sold for carry-out are not eligible for SNAP participation as retail food stores

7 CFR § 278.1(k)(1) references 7 CFR § 278.1(b)(1)(iv), Ineligible Firms, which states, in part, that: Firms that are considered to be restaurants, that is, firms that have more than 50 percent of their total gross sales in foods cooked or heated on-site by the retailer before or after purchase; and hot and/or cold prepared foods not intended for home preparation or consumption, including prepared foods that are consumed on the premises or sold for carryout, shall not qualify for participation as retail food stores under Criterion A or B. This includes firms that primarily sell prepared foods that are consumed on the premises or sold for carryout.

Section 9 of the Food and Nutrition Act of 2008, as amended, states in part, that: A retail food store or wholesale food concern that is denied approval to accept and redeem benefits because the store or concern does not meet criteria for approval . . . may not, for at least 6 months, submit a new application to participate in the program.

## APPELLANT'S CONTENTIONS

The following may represent a summary of Appellant's contentions in this matter; however, in reaching a decision, full attention and consideration has been given to all contentions presented, including any not specifically recapitulated or specifically referenced herein:

- Appellant states its store lines up with the mantra of the USDA FNS.
- The only options around Appellant's location are food places that are not healthy.
- Appellant states the firm is not a restaurant.
- Appellant started selling fruits and vegetables but to prevent the food from going bad it began to make prepared foods for its customers.
- Appellant states its food is for home consumption.
- Appellant challenges that prepared foods are foods not intended for home consumption.
- Appellant believed it was reapplying as a different kind of business.
- Appellant does not believe that one week is not enough time to make an informed decision.
- Appellant does not run a restaurant by all of the city of Chicago's standards and license procedures.
- Appellant states its salads are for home consumption.

3

## ANALYSIS AND FINDINGS

The authorization of a firm to participate in SNAP must be in accord with the Act, as amended, and regulations. These requirements of law cannot be waived. Thus, it is important to clarify for the record that the purpose of this review is to either validate or to invalidate the earlier determination of the Retailer Operations Division, and as such it is limited to consideration of the relevant facts and circumstances that existed at the time of the denial determination.

SNAP regulations at 7 CFR § 278.1(b)(1)(iv) state, in part, that, "Firms that do not meet the eligibility requirements in this section or that do not effectuate the purpose of the SNAP shall not be eligible for program participation . . . . In addition, firms that are considered to be restaurants, that is, firms that have more than 50 percent of their total gross retail sales in foods cooked or heated on-site by the retailer before or after purchase; and hot and/or cold prepared foods not intended for home preparation or consumption, including prepared foods that are consumed on the premises or sold for carryout, shall not qualify for participation as retail food stores under Criterion A or B. This includes firms that primarily sell prepared foods that are consumed on the premises or sold for carryout."

For the purpose of determining whether a firm is a restaurant under SNAP regulations, the issue is not whether the firm has available for sale SNAP-eligible food, the fundamental issue is whether the firm has more than 50 percent of total gross retail sales in the combined sales of heated and/or cold prepared foods, including foods cooked or heated after purchase. Appellant's SNAP retailer application claimed that staple foods accounted for 55 percent of its total gross sales and its cold prepared foods accounted for 30 percent of its total sales. However, according to the Appellant's submitted sales reports, its staple foods accounted for 25.7 percent of its total gross retail sales and its cold-prepared foods accounted for 58.9 percent. Consequently, since the firm's total gross retail sales for that week showed that more than 50 percent of total gross retail sales were from the sale of hot and/or cold prepared foods, under SNAP regulations, it is classified as a restaurant and therefore ineligible for SNAP retailer authorization.

As stated above, in an appeal of an adverse action, Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed. That means Appellant has the burden of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue.

On appeal, Appellant states that its foods are for home consumption and therefore complies with regulation. However, Appellant is misreading the regulation. According to 7 CFR § 271.2, cited above, states in part, "Entities that have more than 50 percent of their total gross retail sales in… hot and/or cold prepared foods not intended for home preparation and consumption, including prepared foods that are consumed on the premises or sold for carry-out are not eligible for SNAP participation as retail food stores." While the prepared foods may be intended for home consumption, they were not intended for home preparation since they were prepared by the store. The language of the regulation requires that both conditions be met, which in this case, they do not.

4

(A) Offer for sale and normally display in a public area, qualifying staple food items on a continuous basis, evidenced by having, on any given day of operation, no fewer than seven different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety and at least one variety of perishable foods in at least three staple food categories. Documentation to determine if a firm stocks a sufficient amount of required staple foods to offer them for sale on a continuous basis may be required in cases where it is not clear that the firm has made reasonable stocking efforts to meet the stocking requirement. Such documentation can be achieved through verifying information, when requested by FNS, such as invoices and receipts in order to prove that the firm had ordered and/or received a sufficient amount of required staple foods up to 21 calendar days prior to the date of the store visit. Failure to provide verifying information related to stock when requested may result in denial or withdrawal of authorization. Failure to cooperate with store visits shall result in the denial or withdrawal of authorization.

(B) Offer for sale perishable staple food items in at least three staple food categories. Perishable foods are items which are either frozen staple food items or fresh, unrefrigerated or refrigerated staple food items that will spoil or suffer significant deterioration in quality within 2–3 weeks; and

(C) Offer a variety of staple foods which means different types of foods within each staple food category. For example: Apples, cabbage, tomatoes, bananas, pumpkins, broccoli, and grapes in the vegetables or fruits category; or cow milk, almond milk, soy yogurt, soft cheese, butter, sour cream, and cow milk yogurt in the dairy products category; or rice, bagels, pitas, bread, pasta, oatmeal, and whole wheat flour in the bread or cereals category; or chicken, beans, nuts, beef, pork, eggs, and tuna in the meat, poultry, or fish category. Variety of foods is not to be interpreted as different brands, nutrient values (e.g., low sodium and lite), flavorings (e.g., vanilla and chocolate), packaging types or styles (e.g., canned and frozen) or package sizes of the same or similar foods. Similar food items such as, but not limited to, tomatoes and tomato juice, different types of rice, whole milk and skim milk, ground beef and beefsteak, or different types of apples (e.g., Empire, Jonagold, and McIntosh), shall count as depth of stock but shall not each be counted as more than one staple food variety for the purpose of determining the number of varieties in any staple food category. Accessory foods shall not be counted as staple foods for purposes of determining eligibility to participate in SNAP as a retail food store.

(iii) *Application of Criterion B.* In order to qualify under this criterion, firms must have more than 50 percent of their total gross retail sales in staple food sales. Total gross retail sales must include all retail sales of a firm, including food and non-food merchandise, as well as services, such as rental fees, professional fees, and entertainment/sports/games income. However, a fee directly connected to the processing of staple foods, such as raw meat, poultry, or fish by the service provider, may be calculated as staple food sales under Criterion B.

(iv) *Ineligible firms.* Firms that do not meet the eligibility requirements in this section or that do not effectuate the purpose of SNAP shall not be eligible for program participation. New applicant firms that are found to be ineligible will be denied authorization to participate in the program, and authorized retail food stores found to be ineligible will be withdrawn from program participation. Ineligible firms under this paragraph include, but are not limited to, stores selling only accessory foods, including spices, candy, soft drinks, tea, or coffee; ice cream vendors selling solely ice cream; and specialty doughnut shops or bakeries not selling bread. In addition, firms that are considered to be restaurants, that is, firms that have more than 50 percent of their total gross sales in foods cooked or heated on-site by the retailer before or after purchase; and hot and/or cold prepared foods not intended for

home preparation or consumption, including prepared foods that are consumed on the premises or sold for carryout, shall not qualify for participation as retail food stores under Criterion A or B. This includes firms that primarily sell prepared foods that are consumed on the premises or sold for carryout. Such firms may qualify, however, under the special restaurant programs that serve the elderly, disabled, and homeless populations, as set forth in paragraph (d) of this section.

(v) *Wholesale food concerns.* Wholesale food concerns, the primary business of which is the sale of eligible food at wholesale, and which meet the staple food requirements in paragraph (b) of this section, shall normally be considered to have adequate food business for the purposes of the program, provided such concerns meet the criteria specified in paragraph (c) of this section.

(vi) *Co-located wholesale food concerns.* No co-located wholesale/retail food concern with 50 percent or less of its total sales in retail food sales may be authorized to redeem SNAP benefits unless it meets the criteria applicable to all retail firms and:

(A) It is a legitimate retail food outlet. Indicators which may establish to FNS that a firm is a legitimate retail food outlet include, but are not limited to, the following:

(*1*) The firm's marketing structure; as may be determined by factors such as, but not limited to:

(*i*) A retail business license;

(*ii*) The existence of sales tax records documenting retail food sales; and/or separate bookkeeping records; and

(*2*) The way the firm holds itself out to the public as evidenced by factors such as, but not limited to:

(*i*) The layout of the retail sales space;

(*ii*) The use of retail advertisements;

(*iii*) The posting of retail prices;

(*iv*) Offering specials to attract retail customers;

(*v*) Hours of operation for retail business;

(*vi*) Parking area for retail customers; and

(B) It has total annual retail food sales of at least $250,000; or

(C) It is a legitimate retail outlet but fails to meet the requirements in paragraph (b)(1)(iv)(B) of this section, and not authorizing such a firm would cause hardship to SNAP households. Hardship would occur in any one of the following circumstances:

(*1*) Program recipients would have difficulty in finding authorized firms to accept their coupons for eligible food;

(*2*) Special ethnic foods would not otherwise be available to recipients; or

(*3*) Recipients would be deprived of an opportunity to take advantage of unusually low prices offered by the firm if no other authorized firm in the area offers the same types of food items at comparable prices.

(2) *The volume of coupon business which FNS may reasonably expect the firm to do.* The FNS officer in charge may consider such factors as the location of a store and previous food sales volumes in evaluating the ability of an applicant firm to attract SNAP business.

(3) *The business integrity and reputation of the applicant.* FNS shall deny the authorization of any firm from participation in the program for a period of time as specified in paragraph (k) of this section based on consideration of information regarding the business integrity and reputation of the firm as follows:

(i) Conviction of or civil judgment against the owners, officers or managers of the firm for:

(A) Commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction;

(B) Commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, receiving stolen property, making false claims, or obstruction of justice; or

(C) Violation of Federal, State and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances, and/or gaming licenses;

(ii) Administrative findings by Federal, State or local officials that do not give rise to a conviction or civil judgment but for which a firm is removed from such a program, or the firm is not



**United States Department of Agriculture**

**USDA**

Food and Nutrition Service

Supplemental Nutrition Assistance Program

Retailer Policy Division

Administrative and Judicial Review Branch

1320 Braddock Place, 5th Floor, Alexandria, VA 22314

David.shively@usda.gov

February 25, 2025

Issac J Crawford
Mana Gourmet Products
434 E 71st St
Chicago, IL 60619-1129
RE: Case Number - C0295689

Dear Store Owner:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS) in response to your request for an administrative review dated January 9, 2025. Also included therein is a statement regarding your rights to a judicial review.

It is the decision of the USDA that FNS's Retailer Operations Division properly denied the authorization of Mana Gourmet Products from participation as a retailer in the Supplemental Nutrition Assistance Program (SNAP). As a result, the firm may not reapply for SNAP authorization for a period of six months from the date of denial.

Sincerely,

DAVID A. SHIVELY
Administrative Review Officer

Enclosure

U.S. Department of Agriculture
Food and Nutrition Service
Administrative Review Branch

**Mana Gourmet Products,**

Appellant,

v.

**Retailer Operations Division,**

Respondent.

Case Number: C0295689

## FINAL AGENCY DECISION

The U.S. Department of Agriculture, Food and Nutrition Service, finds there is sufficient evidence to support the determination by the Retailer Operations Division to deny the reauthorization application of Mana Gourmet Products (hereinafter Appellant) to participate as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP).

### ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with Title 7 of the Code of Federal Regulations (CFR) Part 278, when it denied the application of Appellant to participate in SNAP.

### AUTHORITY

According to 7 U.S.C. § 2023 and the implementing regulations at 7 CFR § 279.1, "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may . . . file a written request for review of the administrative action with FNS."

### CASE CHRONOLOGY

Appellant was initially authorized to participate as a retailer in SNAP on July 7, 2020. In accordance with regulation, each SNAP-authorized firm is required to undergo a periodic reauthorization process to determine whether the firm still meets eligibility requirements.

On October 22, 2023, Appellant submitted the required reauthorization application, FNS-252-R, *Supplemental Nutrition Assistance Program Reauthorization Application for Stores*. On this document, Appellant reported that around 55 percent of its gross retail sales were from the sale

1

of staple foods and around 30 percent of its gross retail sales were from the sale of cold prepared foods. The application also reported that the firm carried at least three stocking units of three varieties in each of the four food staple products. As part of the firm's reauthorization process, an onsite store visit was conducted by an FNS contractor on December 14, 2024, to verify the firm's staple food stock.

On December 23, 2024, the Retailer Operations Division sent Appellant a letter requesting additional information. According to the letter, the Retailer Operations Division informed Appellant that based upon information obtained from Appellant's application and/or from the store visit, the store does not meet Criterion A and/or Criterion B requirements. Appellant was instructed to provide invoices/receipts to verify that the store carries at least three stocking units of three different varieties of foods in the dairy and breads or cereal staple food categories.

Additionally, the letter also asked Appellant to produce a a sales summary reports electronically generated by the firm's cash register system, such as end-of-day sales tapes, which must indicate which shares of its sales were from heated foods, cold prepared foods, non-foods, accessory foods, staple foods, and charges for heating services. The record indicates that Appellant complied with the request.

In a letter dated January 3, 2025, the Retailer Operations Division informed Appellant that its application to participate as an authorized retailer in SNAP was denied because it did not meet the definition and eligibility requirements of a retail food store established by Federal regulations at 7 CFR § 278.1(b)(1). This action was taken because the Retailer Operations Division determined that the Appellant firm was primarily a restaurant based on information provided on and in support of the firm's SNAP retailer authorization application, and as such failed to meet the definition of an eligible firm. Specifically, the denial letter states your firm is primarily a restaurant, because more than 50 percent of your total gross retail sales are from "heated foods" and/or "prepared foods." "Heated foods" are foods cooked or heated by the retailer before or after purchase." Prepared foods" are hot or cold foods not intended for home preparation and/or home consumption, including prepared foods that are consumed on the premises or sold for carryout. SNAP regulations, at 7 CFR § 278.1(b)(1)(iv), provides that restaurants are not eligible to participate in SNAP.

In an email dated January 9, 2025, Appellant requested an administrative review of the Retailer Operations Division's determination. The request was granted. Appellant supplemented its response, dated February 13, 2025, thereafter.

## STANDARD OF REVIEW

In an appeal of an adverse action, Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed. That means Appellant has the burden of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue.

## CONTROLLING LAW

The controlling law in this matter is contained in the Food and Nutrition Act of 2008, as amended (7 U.S.C. § 2018), and implemented through regulation under Title 7 CFR Part 278. In particular, 7 CFR Part 278.1(k)(1) and Part 278.1(l)(1) establish the authority upon which the application of any firm to participate in SNAP may be denied if it fails to meet the definition of an eligible firm.

7 CFR § 271.2 states, in part, that: Entities that have more than 50 percent of their total gross retail sales in: Food cooked or heated on-site by the retailer before or after purchase; and hot and/or cold prepared foods not intended for home preparation and consumption, including prepared foods that are consumed on the premises or sold for carry-out are not eligible for SNAP participation as retail food stores

7 CFR § 278.1(k)(1) references 7 CFR § 278.1(b)(1)(iv), Ineligible Firms, which states, in part, that: Firms that are considered to be restaurants, that is, firms that have more than 50 percent of their total gross sales in foods cooked or heated on-site by the retailer before or after purchase; and hot and/or cold prepared foods not intended for home preparation or consumption, including prepared foods that are consumed on the premises or sold for carryout, shall not qualify for participation as retail food stores under Criterion A or B. This includes firms that primarily sell prepared foods that are consumed on the premises or sold for carryout.

Section 9 of the Food and Nutrition Act of 2008, as amended, states in part, that: A retail food store or wholesale food concern that is denied approval to accept and redeem benefits because the store or concern does not meet criteria for approval . . . may not, for at least 6 months, submit a new application to participate in the program.

## APPELLANT'S CONTENTIONS

The following may represent a summary of Appellant's contentions in this matter; however, in reaching a decision, full attention and consideration has been given to all contentions presented, including any not specifically recapitulated or specifically referenced herein:

- Appellant states its store lines up with the mantra of the USDA FNS.
- The only options around Appellant's location are food places that are not healthy.
- Appellant states the firm is not a restaurant.
- Appellant started selling fruits and vegetables but to prevent the food from going bad it began to make prepared foods for its customers.
- Appellant states its food is for home consumption.
- Appellant challenges that prepared foods are foods not intended for home consumption.
- Appellant believed it was reapplying as a different kind of business.
- Appellant does not believe that one week is not enough time to make an informed decision.
- Appellant does not run a restaurant by all of the city of Chicago's standards and license procedures.
- Appellant states its salads are for home consumption.

3

## ANALYSIS AND FINDINGS

The authorization of a firm to participate in SNAP must be in accord with the Act, as amended, and regulations. These requirements of law cannot be waived. Thus, it is important to clarify for the record that the purpose of this review is to either validate or to invalidate the earlier determination of the Retailer Operations Division, and as such it is limited to consideration of the relevant facts and circumstances that existed at the time of the denial determination.

SNAP regulations at 7 CFR § 278.1(b)(1)(iv) state, in part, that, "Firms that do not meet the eligibility requirements in this section or that do not effectuate the purpose of the SNAP shall not be eligible for program participation . . .. In addition, firms that are considered to be restaurants, that is, firms that have more than 50 percent of their total gross retail sales in foods cooked or heated on-site by the retailer before or after purchase; and hot and/or cold prepared foods not intended for home preparation or consumption, including prepared foods that are consumed on the premises or sold for carryout, shall not qualify for participation as retail food stores under Criterion A or B. This includes firms that primarily sell prepared foods that are consumed on the premises or sold for carryout."

For the purpose of determining whether a firm is a restaurant under SNAP regulations, the issue is not whether the firm has available for sale SNAP-eligible food, the fundamental issue is whether the firm has more than 50 percent of total gross retail sales in the combined sales of heated and/or cold prepared foods, including foods cooked or heated after purchase. Appellant's SNAP retailer application claimed that staple foods accounted for 55 percent of its total gross sales and its cold prepared foods accounted for 30 percent of its total sales. However, according to the Appellant's submitted sales reports, its staple foods accounted for 25.7 percent of its total gross retail sales and its cold-prepared foods accounted for 58.9 percent. Consequently, since the firm's total gross retail sales for that week showed that more than 50 percent of total gross retail sales were from the sale of hot and/or cold prepared foods, under SNAP regulations, it is classified as a restaurant and therefore ineligible for SNAP retailer authorization.

As stated above, in an appeal of an adverse action, Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed. That means Appellant has the burden of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue.

On appeal, Appellant states that its foods are for home consumption and therefore complies with regulation. However, Appellant is misreading the regulation. According to 7 CFR § 271.2, cited above, states in part, "Entities that have more than 50 percent of their total gross retail sales in… hot and/or cold prepared foods not intended for home preparation and consumption, including prepared foods that are consumed on the premises or sold for carry-out are not eligible for SNAP participation as retail food stores." While the prepared foods may be intended for home consumption, they were not intended for home preparation since they were prepared by the store. The language of the regulation requires that both conditions be met, which in this case, they do not.

4

This review also understands Appellant's argument that it does not qualify as a restaurant under the standards set by the city of Chicago. However, such circumstance is not relevant to this decision. Appellant's firm is defined as a restaurant per SNAP regulations cited above and other sources have no authority or bearing on such determination.

Appellant also argues that Retailer Operations Division only used one week of sales to determine whether the firm is a restaurant. Appellant is reminded, however, that the extent of this review is limited to the relevant facts and circumstances at the time of denial. It is also not the purpose of this review to question the Retail Operations Division's policies and procedures. Consequently, the sales receipts provided by Appellant, which are not disputed as being incorrect, demonstrate that Appellant qualifies as a restaurant under SNAP regulations.

As to Appellant's statement that it is the only store in the area that sells healthy foods, Appellant is referred to the USDA FNS SNAP Restaurant Meals Program (RMP). Information on the USDA FNS SNAP Restaurant Meals Program (RMP) is available at https://www.fns.usda.gov/snap/retailer/restaurant-meals-program. Such program is authorized in the State of Illinois.

## CONCLUSION

Based on the discussion above, the determination by the Retailer Operations Division to deny the application of Mana Gourmet Products to participate as an authorized SNAP retailer is sustained.

In accordance with 7 CFR § 278.1(k)(2), Appellant shall not be eligible to reapply for participation as a retailer in the SNAP for a minimum period of six months from the effective date of the denial.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 U.S.C. § 2023 and 7 CFR § 279.7. If Appellant desires a judicial review, the complaint must be filed in the U.S. District Court for the district in which Appellant's owner resides, is engaged in business, or in any court of record of the State having competent jurisdiction. This complaint, naming the United States as the defendant, must be filed within thirty (30) days of delivery of this decision. The judicial filing deadline is stipulated by statute; FNS has no authority to grant an extension.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

DAVID SHIVELY                                          February 25, 2025
ADMINISTRATIVE REVIEW OFFICER